**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRAD JASON LONG,** | * | |
| **# 16801-003,** | * | |
| | * | |
| **Petitioner,** | * | |
| | * | **CRIMINAL NO. 17-00026-KD-B** |
| **vs.** | * | **CIVIL ACTION NO. 19-00452-KD-B** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Respondent.** | * | |

<u>**REPORT AND RECOMMENDATION**</u>

Pending before the Court are Petitioner Brad Jason Long's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 48), and the Government's response in opposition (Doc. 55).  This action was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Cases and is now ready for consideration.[1]  Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration, the undersigned

---

[1] The Honorable Chief United States District Judge Kristi K. DuBose presided over the proceedings in this action.  The undersigned has reviewed Long's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Chief Judge DuBose.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims which are based upon unsupported generalizations, or claims that are affirmatively

hereby recommends that Long's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 48) be **DENIED,** that this action be **DISMISSED,** and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Brad Jason Long. The undersigned also recommends that in the event Long requests a certificate of appealability, it should be denied, as he is not entitled to appeal *in forma pauperis.*

I.   **PROCEDURAL BACKGROUND**

Long was indicted on February 24, 2017 and charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). On June 13, 2017, Long's appointed counsel advised the Court of Long's intent to enter a blind guilty plea, and Long consented to have his guilty plea hearing conducted by the undersigned Magistrate Judge. (Docs. 17, 18; Doc. 42 at 2).

During the guilty plea hearing, Long was placed under oath and questioned by the Court regarding the voluntariness of his plea. Long confirmed that he was not under the influence of drugs or alcohol, that he understood the charges in the indictment, that he had fully discussed with his attorney all of the facts surrounding those charges, and that no one had forced, pressured, or promised him anything to cause him to plead guilty. (Doc. 42

---

contradicted by the record. <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989).

at 3-5).  At the Court's directive, counsel for the Government
informed Long of the possible penalties for his offense.  (Id. at
5-6).  Counsel stated:

> MR. BORDENKIRCHER: Yes, Your Honor.
>     The possible penalties in this case for violation
> of Title 18 United States Code, Section 922(g)(1) are a
> maximum sentence of ten years in jail; 250-thousand-
> dollar fine; three years of supervised release; and 100-
> dollar special assessment.
>     However, if the defendant had three previous
> violent felonies or drug felonies, the -- he could be
> subject to an extended penalty for up to 15 years, Your
> Honor.
>
> THE COURT: A minimum mandatory penalty of 15 years?
>
> MR. BORDENKIRCHER: That's correct, Your Honor.
>
> THE COURT: Okay.  And what is that under?  The career -
> -
>
> MR. BORDENKIRCHER: Career criminal provisions, 922(e) I
> think it is.
>
> MS. O'BANNON: 924(e).
>
> MR. BORDENKIRCHER: I don't think that applies in this
> case, but out of an abundance of caution, we mention it.
>
> THE COURT:  Okay.  Okay.
>     Mr. Long, do you understand that those are the
> possible penalties which could apply if you choose to
> enter a guilty plea today?
>
> THE DEFENDANT:  Yes, ma'am.
>
> . . . .
>
> THE COURT:  The United States Sentencing Commission has
> issued guidelines for judges to consider in determining
> the sentence in a criminal case.  The guidelines are
> advisory.
>     Have you and your attorney talked about how those
> guidelines might apply to your case?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  The way in which the sentencing guidelines might apply to your case might be affected by what you say to the Court and probation officer.
     Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  The Court will not be able to determine your sentence until after the presentence report has been completed and you and the United States have had an opportunity to challenge the facts reported by the probation officer.
     Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  The sentence imposed might be different from any estimate your attorney or anyone else might have given you.
     Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  As I indicated, the guidelines are advisory. The judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the guidelines.
     Do you understand that?

THE DEFENDANT:  Yes, ma'am.

. . . .

THE COURT:  If your sentence is more severe than you expected, you will still be bound by your plea.  Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea.  The time to make that decision is now.
     Do you understand that?

THE DEFENDANT:  Yes, ma'am.

(Id. at 5-9).

Long then expressed his understanding that he had the right to a jury trial, the right to require the Government to prove his guilt beyond a reasonable doubt, and the right to call witnesses and testify on his own behalf if he so chose, and he acknowledged that he was waiving those rights by pleading guilty.  (Id. at 10). At the Court's directive, counsel for the Government described the facts that the Government was prepared to prove at trial.  (Id. at 12-13).  The Court questioned Long regarding the Government's proffer of facts:

> THE COURT:  Okay.  Let me go through this.
>     Mr. Long, do you admit that on October 25th, 2015, you were convicted in Mobile County of unlawful distribution of a controlled substance?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  And as a result, you were a convicted felon?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Okay.  And do you admit that on January 3rd, 2017, you possessed the two handguns listed in –- I'm sorry.  The two firearms that were referenced by the Government and that were listed in the indictment?
>
> MS. O'BANNON:   Your Honor, I'm going to say that subsequent to the arrest on January the 3rd, 2017, he was interviewed and Mr. Long, at that time, made admissions that he was in possessions of those weapons. So we stand by those previous admissions.
>
> THE COURT:  Okay.  So -- but he needs to admit on the record for the guilty plea that on that day, January 3rd, 2017, he was in possession of the two firearms listed in the indictment.
>
> THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  And you admit that the firearms were manufactured outside the State of Alabama?

THE DEFENDANT:  I can't really say.  I don't know where they were manufactured at.

MR. BORDENKIRCHER:  Yeah.  I guess really what he has to do is agree that we could prove that at trial.

MS. O'BANNON:  Right, Your Honor.

THE COURT:  Okay.

MS. O'BANNON:  Your Honor, we do agree that the Government -- based on the evidence we received in discovery that it's possible that the Government could prove that those firearms were manufactured outside the State of Alabama.

THE COURT:  So you agree, Mr. Long, that the Government could prove the firearms were manufactured outside the State of Alabama?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Okay.  All right.  Based on your admissions to the Court here on the record, I find that the facts to which you have admitted support and state a violation of the charges to which you are pleading.
    How do you plead to the single count in the indictment of being a felon in possession of a firearm? Do you plead guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  And are you pleading guilty of your own free will because you are guilty?

THE DEFENDANT:  Yes, ma'am.

(Id. at 13-15).

In a report and recommendation issued on August 16, 2017, the undersigned recommended that Long's guilty plea be accepted and that he be adjudged guilty of the charged offense.  (Doc. 22).

The report and recommendation was adopted by the Chief Judge DuBose, and Long was adjudged guilty. (Doc. 24). United States Probation and Pretrial Services generated a draft presentence investigation report ("PSR") that detailed Long's extensive criminal history, among other things. (Doc. 23). Most relevant to the instant motion, the PSR noted that Long had at least three prior convictions for serious drug offenses, which were committed on different occasions. (Id. at 5). These included a 2004 Louisiana conviction for possession with intent to distribute marijuana and possession with intent to distribute a Schedule II controlled substance. (Id. at 6). Also included were two 2015 convictions in Mobile County, Alabama Circuit Court for unlawful distribution of a controlled substance (oxycodone). (Id. at 8-9). Based on these three prior state court convictions, Long was classified in the PSR as an armed career criminal subject to an enhanced sentence under the provisions of the Armed Career Criminal Act (hereinafter "ACCA"), 18 U.S.C. § 924, et. seq. (Id. at 5).

Long's defense attorney objected to the PSR's designation of Long as an armed career criminal and argued that Long only had two prior "serious drug offenses" as defined in 18 U.S.C. § 924(e), rather than the three required to subject him to an enhanced sentence under that statute. (Doc. 26 at 1). Specifically, defense counsel asserted that Long's Louisiana conviction for possession with intent to distribute marijuana and possession with

intent to distribute a Schedule II controlled substance did not qualify as a "serious drug offense" under the ACCA because he was "only convicted of possession and not distribution." (Id.). In response, the probation officer filed an addendum to the PSR addressing Long's objections. (Doc. 28). The addendum provided that:

> The probation officer received documents from the Clerk's Office of St. Tammany Parish that confirmed the defendant was convicted of Possession with Intent to Distribute Marijuana and Possession with Intent to Distribute a Schedule II Controlled Substance. Additional documents were not attainable due to monetary requests from the Clerk's Office of St. Tammany Parish. However, the government advised that it will obtain the judgment and indictment in the above-listed case, and present the documents at sentencing.

(Id. at 1).

At Long's sentencing hearing on November 7, 2017, Chief Judge DuBose addressed Long's objection to the armed career criminal classification:

> THE COURT: Mr. Long, the probation office has determined that your criminal history is a category VI and that your total offense level is 30. They've also determined that because you have three prior serious drug offenses, that you're subject to the 15-year mandatory minimum.
>     Your attorney has objected to that and also objected to paragraph 32, alleging that you are not convicted of possession with intent to distribute, only possession. What's the government's position?
>
> MR. BORDENKIRCHER: Well, Your Honor -- and I provided this to probation and to defense counsel earlier. We've got the actual records from that March 31st, 2004, conviction and I provided it to defense counsel. She's looked at it and so has probation. And it specifically

8

lists that was possession of a Schedule I controlled substance with intent to distribute.

(Doc. 45 at 2-3). Long's counsel stated that her research showed that the prescribed term of imprisonment under the Louisiana statutes for Long's offense at the time it was committed was between two and thirty years. (Id. at 4-5). The Court then asked Long's counsel what her argument was as to why the ACCA did not apply. (Id. at 5). Long's counsel responded:

> MS. O'BANNON: Your Honor, I did go over everything with respect to Mr. Long's criminal record and, in discussing the case, whether or not he would go to trial or not. He was adamant that he didn't want to go to trial based on the facts of the case but that he wanted to be able to reserve his right to appeal, which is why he entered a blind plea. However, in getting the documents back, Your Honor, I don't think that I have an argument with respect to the Louisiana conviction.

> THE COURT: All right. At his plea -- I went back and I listened to his plea colloquy -- and for some reason neither the government nor the defense believed that the 924(e) applied. What happened, did y'all not have the facts? Did y'all not have these three prior convictions before? Why did you not think it applied, Mr. Bordenkircher? I'll start with you.

> MR. BORDENKIRCHER: We didn't think it applied because we didn't actually have the records from Louisiana. And when we got the probation report -- Louisiana won't provide you with the actual documents until you actually send money and then they'll provide you with the documents. So at the time when I looked at the offense, it seemed like it was marijuana possession, so that's why we asked for a continuance earlier of this case to actually get the documents, because we were having a hard time getting them out of Tammany Parish. And when I got the actual documents, that's when I turned them over to defense counsel.

THE COURT:  Okay.  And what did you advise your client
before you entered the plea?

MS. O'BANNON:  Your Honor, he was advised that he was -
-

THE COURT:  What, did you advise him?

MS. O'BANNON:  Yes.

THE COURT:  Did you advise him of it?

MS. O'BANNON:  Yes, Your Honor.  We had a separate
conversation not on the record.  He was advised that
potentially he could be looking at the 15-year minimum.
However, my client was adamant that the Louisiana case
was not a distribution case.

THE COURT:  Anything you want to say, Mr. Long?

THE DEFENDANT:  I was under the impression that it was
possession with intent, you know, not a distribution, it
was just a possession with intent.  In Louisiana I was
only sentenced to two years.  And then another time in
Alabama I got -- I had gave away some of my prescription
pain killers and I was sentenced to 48 months on that.
And I'm not a career drug dealer or anything.  So I was
almost positive that, you know, that I wasn't
distributing drugs in Saint Tammany Parish and I had
possession of drugs.  And they were in two different
bags, so they said it was intent.

THE COURT:  Right.

THE DEFENDANT:  But it wasn't distribution.

THE COURT:  Well, intent under the law counts as a
distribution.  I mean --

THE DEFENDANT:  And then the ones in Alabama as well, I
had gave away some of my pain killers.  And I'm not
saying I'm not guilty of not -- having a firearm.  And
I'm going to take responsibility for that.

THE COURT:  Well, here's where we are today:  I have to
look at your prior cases and find out whether they
qualify as serious drug offenses.  It says: an offense

under state law that involves distributing, which means
your unlawful distributing of oxycodone counts.  And so
that's two.
            And then: or possessing with intent to distribute,
which your Louisiana case also counts.  So you have
three.
            When you have three, Congress has tied my hands and
given me no discretion.  So that's where we are.
            Any other objections from the defense?

MS. O'BANNON:  Your Honor, no objection but with respect
to what we submitted in our position to number 32 in the
PSR report.

(Id. at 5-7).  Having found Long to be an armed career criminal,

the Court sentenced him to 180 months' imprisonment, the minimum

prison sentence authorized under 18 U.S.C. § 924(e).  (Id. at 8).

After pronouncing Long's sentence, the Court heard Long's

objections.  Long's counsel stated: "Your Honor, I know I've had

this discussion with my client about objections, and he does want

to object to the ACCA designation.  He believes, even given his

record, that he's not an armed career criminal."  (Id. at 9).

        On November 20, 2017, Long's counsel, an assistant federal

defender, filed a notice of appeal on Long's behalf, and subsequent

thereto, another attorney in the federal defender's office took

over Long's appeal.  (Doc. 35; Doc. 55-1 at 1).  On February 7,

2018, Long's appellate counsel filed a brief pursuant to Anders v.

State of Cal., 386 U.S. 738 (1967), stating that she had found no

non-frivolous issues for adjudication on appeal.  (Doc. 55-1).

The Eleventh Circuit's independent examination of the record also

revealed no arguable issues of merit, and on August 8, 2018, that Court affirmed Long's conviction and sentence.[3]  (Doc. 46).

On August 1, 2019, Long filed the instant motion seeking post-conviction relief under 28 U.S.C. § 2255.[4]  (Doc. 48).  The Government filed a response in opposition.  (Doc. 55).  Long's motion is now ripe for review.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal.").  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does

---

[3] The Court also granted appellate counsel's request to withdraw from further representation of Long.  (Doc. 46 at 2).

[4] Under the mailbox rule, a prisoner's petition is deemed filed on the date it is delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam).  Absent contrary evidence, that date is presumed to be the date on which the prisoner signed the motion. Id.; (see Doc. 48 at 10).

not permit reruns."  <u>Moore v. United States</u>, 598 F.2d
439, 441 (5th Cir. 1979).

<u>United States v. Evans</u>, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008
WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008) (quotation marks in
original).

### III.  <u>DISCUSSION</u>

In his § 2255 motion, Long raises four grounds for relief.
The Court will address each in turn.

#### A.   <u>Rehaif</u> **Claim.**

Relying on the Supreme Court's recent ruling in <u>Rehaif v.
United States</u>, 139 S. Ct. 2191 (2019), Long first argues that "the
Government was unable to meet the burden" of proving that he knew
that he belonged to the relevant category of individuals prohibited
from possessing a firearm, i.e., that he knew he was a convicted
felon.  (Doc. 48 at 4).  In response, the Government argues that
this claim is procedurally defaulted, and even if were not, the
claim fails on the merits because there is no reasonable basis to
conclude that Long lacked knowledge of his status as a convicted
felon at the time of his offense.  (Doc. 55 at 11-15).

Federal law prohibits anyone "who has been convicted in any
court of[] a crime punishable by imprisonment for a term exceeding
one year" from possessing a firearm.  18 U.S.C. § 922(g)(1).
Anyone who "knowingly violates" that provision "shall be fined .
. ., imprisoned . . ., or both."  <u>Id</u>. § 924(a)(2).  Until last

13

year, courts had interpreted that language to mean that a defendant could be convicted if he knew he possessed a firearm. See United States v. Innocent, 977 F.3d 1077, 1079 (11th Cir. 2020) (citing United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) (per curiam)).   In Rehaif, the Supreme Court clarified that a defendant must know *both* that he possessed a firearm *and* that he has been convicted of a crime punishable by imprisonment for more than a year in order to violate § 922(g)(1).   See Rehaif, 139 S. Ct. at 2194.

As noted *supra*, in the instant case, Long was charged with and convicted of knowingly possessing a firearm as a convicted felon in violation of § 922(g)(1).   There is no dispute that the indictment did not expressly charge that Long knew that he was a felon at the time of the offense.[5]   There is also no dispute that Long did not raise this issue at the trial level or on direct appeal.   Long alleges that he did not raise this issue on direct appeal because he was advised that direct appeal was limited to objections raised at the sentencing hearing, and because the

---

[5] The indictment charged that on or about January 3, 2017, Long, "having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, to-wit: Unlawful Distribution of a Controlled Substance on October 27, 2015, in the Circuit Court of Mobile County, Alabama, case number CC2015-005805, did knowingly possess, in and affecting commerce, a firearm . . . ." (Doc. 1 at 1).   Long admitted at his guilty plea hearing that he was a convicted felon.   (See Doc. 42 at 13).

14

Supreme Court had not yet issued its ruling in Rehaif at the time
of his sentencing.  (Doc. 48 at 4).

"Under the procedural default rule, a defendant generally
must advance an available challenge to a criminal conviction or
sentence on direct appeal or else the defendant is barred from
presenting that claim in a § 2255 proceeding." Lynn v. United
States, 365 F.3d 1225, 1234 (11th Cir. 2004) (per curiam). "Where
a defendant has procedurally defaulted a claim by failing to raise
it on direct review, the claim may be raised in habeas only if the
defendant can first demonstrate either 'cause' and [resulting]
actual 'prejudice,' or that he is 'actually innocent.'" Bousley
v. United States, 523 U.S. 614, 622 (1998) (internal citations
omitted).  To show cause, a petitioner must demonstrate "that some
objective factor external to the defense prevented [the
petitioner] or his counsel from raising his claims on direct appeal
and that this factor cannot be fairly attributable to [the
petitioner's] own conduct." Lynn, 365 F.3d at 1235.  And to
establish prejudice, a petitioner must "show that there is at least
a reasonable probability that the result of the proceeding would
have been different." Harris v. Comm'r, Ala. Dep't of Corr., 874
F.3d 682, 688 (11th Cir. 2017) (citation and internal quotation
marks omitted).  Finally, the actual innocence exception applies
when a petitioner is able to "show that it is more likely than not
that no reasonable juror would have found [him] guilty beyond a

reasonable doubt" in light of "new reliable evidence" of innocence. Schlup v. Delo, 513 U.S. 298, 324, 327 (1995).

At the time of Long's guilty plea and direct appeal, controlling precedent held that the Government was not required to prove that a defendant charged with violating § 922(g)(1) knew he had been convicted of a felony at the time he possessed a firearm. See Jackson, 120 F.3d at 1229; United States v. Rehaif, 888 F.3d 1138, 1143-47 (11th Cir. Mar. 26, 2018), rev'd, 139 S. Ct. at 2200. However, Long cannot demonstrate cause for failing to challenge the elements of § 922(g)(1) based on the timing of the Supreme Court's Rehaif decision alone.  While cause for a procedural default may exist where a claim "is so novel that its legal basis is not reasonably available to counsel," Reed v. Ross, 468 U.S. 1, 16 (1984), it is not enough "that a claim was unacceptable to that particular court at that particular time."  Bousley, 523 U.S. at 623 (citation and internal quotation marks omitted).  As other district courts have recognized in this context, the "issue decided in Rehaif was percolating in the courts for years," and certainly by the time Long entered his plea in June 2017.  See United States v. Bryant, 2020 U.S. Dist. LEXIS 9860, at *9, 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020); Wilson v. United States, 2020 U.S. Dist. LEXIS 29897, at *24-25 (W.D.N.C. Feb. 21, 2020); Waring v. United States, 2020 U.S. Dist. LEXIS 32395, at *4-5, 2020 WL 898176, at *2 (S.D.N.Y. Feb. 25, 2020).  Indeed, as the Government

points out, the defendant in <u>Rehaif</u> faced the same adverse precedent in an analogous context, yet he raised the issue both at trial and on appeal to the Eleventh Circuit.

Long also appears to argue that his attorneys caused the omission of this claim on direct appeal by advising him "that direct appeal was limited to objections raised at the sentencing hearing." (Doc. 48 at 4). Long implies that his appellate counsel caused the omission of the claim on direct appeal by filing the <u>Anders</u> brief. However, assuming *arguendo* that Long could establish cause for his failure to raise this claim, he has not shown that he suffered actual prejudice as a result. To establish actual prejudice, Long would have to show a reasonable probability that he would have insisted on going to trial rather than entering a guilty plea had he been advised that the Government was required to prove that he knew of his status as a convicted felon at the time of the subject offense.

Long cannot make this showing in the instant case, as the record demonstrates that he was well aware of his status as a convicted felon at the time of the offense. During Long's guilty plea hearing in 2017, he readily admitted that he was convicted of unlawful distribution of a controlled substance in October 2015 and, as a result, was a convicted felon. (Doc. 42 at 13). Moreover, the criminal history section of Long's PSR listed multiple felony convictions, including convictions in three

different states for which he was sentenced to more than one year in prison. (Doc. 23 at 6-9). And, during Long's sentencing hearing, he evidenced familiarity with his earlier convictions when he advised the Court that he was sentenced to "two years" for his Louisiana drug conviction and was sentenced to "48 months" for his drug conviction in Alabama. (Doc. 45 at 6).

Taken together, the record is more than sufficient to establish Long's knowledge of his convicted felon status at the time he possessed the firearms in 2017. See United States v. Ward, 796 F. App'x 591, 600 (11th Cir. 2019) (per curiam) ("The fact that Ward received multiple sentences of more than one year of imprisonment for serious felonies—and in fact served nearly eight years in prison—indicates that he knew that his prior offenses were punishable by more than one year of imprisonment."); United States v. Gilcrest, 792 F. App'x 734, 739 (11th Cir. 2019) (per curiam) ("The record shows that at the time of the offense, Gilcrest knew he had been convicted of a crime punishable by more than a year in prison because he had served more than a year in prison on more than occasion. He had also had a prior conviction for possessing a firearm as a felon, which was enough on its own to inform him of his status."). In the face of clear evidence that he was well aware of his status as a felon, Long has proffered no facts that suggest, let alone demonstrate a reasonable probability, that he would have elected to go to trial rather than

enter a guilty plea had he been advised that the Government had to prove that he knew of his status as a felon when he possessed the firearms.  Accordingly, Long cannot demonstrate actual prejudice.

Additionally, Long does not allege, nor could he prove, actual innocence.  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623.  To establish actual innocence, Long would have to "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (citation and internal quotation marks omitted).  Long's factual guilt is firmly established by the PSR and his own admissions during his guilty plea and sentencing hearings.  Long cannot demonstrate that he is actually innocent of knowingly and illegally possessing firearms as a convicted felon or that "it is more likely than not that no reasonable juror would have convicted him" of that offense. See id.  Therefore, Long's Rehaif claim is procedurally defaulted from habeas review.

Even if Long could overcome the procedural default bar, he would not be entitled to relief.  "Because a § 2255 motion is a collateral attack, 'habeas relief will be granted only if the constitutional violation at the trial level resulted in "actual prejudice" to the [petitioner].'" Rosales-Diaz v. United States, 805 F. App'x 660, 666 (11th Cir. 2020) (per curiam) (quoting Phillips v. United States, 849 F.3d 988, 993 (11th Cir. 2017));

19

see also Vines v. United States, 28 F.3d 1123, 1130 (11th Cir.
1994) (stating that a § 2255 petitioner "is entitled to reversal
only when error resulted in actual prejudice because it had
substantial and injurious effect or influence in determining" the
final result) (citations and internal quotation marks omitted).
An "error is not harmless if there is a reasonable likelihood that
[it] affected the defendant's substantial rights."   Rivers v.
United States, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation and
internal quotation marks omitted).

     Since the Supreme Court's decision in Rehaif, the Eleventh
Circuit has addressed the issue of whether the omission of the
knowledge of status element from the indictment and plea colloquy
of a defendant who pleaded guilty to possession of a firearm by a
convicted felon affected the defendant's substantial rights.  In
doing so, the Eleventh Circuit has noted that a defendant who
pleaded guilty "cannot prove that his substantial rights were
affected unless he shows a reasonable probability that, but for
the error, he would not have entered the plea."  United States v.
Green, 798 F. App'x 527, 533 (11th Cir. 2020) (per curiam).[6]  In
Green, there was no dispute that an error occurred when the
defendant's plea colloquy failed to establish that he knew that he

---

[6] A court "may consult the whole record" in order to determine
whether an error affected a defendant's substantial rights.  Green,
798 F. App'x at 533.

20

had been convicted of a crime punishable by a prison term exceeding
one year, but the Court held that the defendant could not show
that the error affected his substantial rights because the record
indicated that he knew he was a convicted felon and thus there was
no reason to believe he would have proceeded to trial had he been
advised of the knowledge of felon status element.  Id.  The Court
stated:

> According to the undisputed facts of the PSR, Green had
> several felony convictions before his current offense,
> including a 2011 conviction for aggravated battery that
> resulted in a three-year term of imprisonment.  The fact
> that Green had been convicted of multiple felonies and
> served a three-year prison sentence for one indicates
> that he knew he was a convicted felon.

Id.; see also United States v. Ward, 796 F. App'x 591, 600-01 (11th
Cir. 2019) (per curiam); United States v. Jones, 800 F. App'x 789,
791-92 (11th Cir. 2020) (per curiam).

Thus, the relevant question is whether Long would have pleaded
guilty had he known that the Government had to prove that he knew
of his status as a convicted felon when he possessed the firearms.
As explained previously, the record clearly establishes Long's
knowledge of his status as a convicted felon, and there is
absolutely no reason to believe that had he been fully informed of
the elements of § 922(g)(1), Long would have decided not to plead
guilty and to instead stake his fate on the facially preposterous
defense that he was unaware of his multiple prior felony
convictions.  In short, there has been no miscarriage of justice

warranting habeas relief in this case, and Long cannot establish actual prejudice.  Accordingly, Long is entitled to no relief with respect to his <u>Rehaif</u> claim.

### B.    Section 401 of the First Step Act Does Not Affect Long's Sentence Under the ACCA.

As his second ground for relief, Long appears to argue that § 401(a) of the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), amended the definition of a "serious drug offense" under 18 U.S.C. § 924(e)(2), and that the amendment applies retroactively to him.  (<u>See</u> Doc. 48 at 5).  Long asserts that the FSA narrowed the range of prior drug convictions that trigger a mandatory penalty under the ACCA, so that a prior felony drug conviction can now qualify as a "serious drug offense" only if (1) it carried a maximum term of at least ten years' imprisonment, (2) *the defendant actually served more than twelve months in prison*, and (3) the defendant was released from prison within fifteen years of the current offense.  (<u>Id.</u>).  Under this standard, Long contends that his fifteen-year mandatory minimum sentence under § 924(e) can no longer stand, because neither of his 2015 Alabama drug convictions qualified as "serious drug offenses" since he did not actually serve at last twelve months in prison for those crimes.  (<u>Id.</u>).

The ACCA provides that a defendant who has three prior convictions "for a violent felony or a serious drug offense, or

both," is subject to a 180-month mandatory minimum sentence if he is convicted of being a felon in possession of a firearm.  18 U.S.C. § 924(e)(1).  The term "serious drug offense" is defined, in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"  Id. at § 924(e)(2)(A)(ii).

"Section 401 [of the FSA], titled 'Reduce and Restrict Enhanced Sentencing for Prior Drug Felonies,' sets forth a number of amendments to the Controlled Substances Act (CSA) and Controlled Substances Import and Export Act." United States v. Smith, 798 F. App'x 473, 475 (11th Cir. 2020) (per curiam).  Subsection 401(a)(1) amended the definitions of 21 U.S.C. § 802 by adopting the term "serious drug felony" and defining it as "an offense described in section 924(e)(2) of title 18, United States Code, for which -- (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." FSA § 401(a)(1); 21 U.S.C. § 802(57).  Section 401 also narrowed the range of prior drug convictions that trigger a mandatory penalty under 21 U.S.C. § 841(b)(1)(A) by changing the type of prior conviction that triggers a mandatory penalty from a

"felony drug offense"[7] to a "serious drug felony." FSA § 401(a)(2);
21 U.S.C. § 841(b)(1).

Long's argument that § 401(a)(1) of the FSA changed the
criteria of a "serious drug offense" under the ACCA is without
merit.  The Eleventh Circuit recently considered this exact claim
and concluded that "the plain and unambiguous language of §
401(a)(1) amends only the [Controlled Substances Act].  Nothing
indicates that Congress intended to replace the ACCA's separately
defined term."  Smith, 798 F. App'x at 476 (internal citation
omitted); cf. United States v. Edwards, 767 F. App'x 546, 547 (4th
Cir. 2019) (per curiam), cert. denied, 140 S. Ct. 1241 (2020).

Even if FSA § 401(a)(1) did amend the definition of a "serious
drug offense" in 18 U.S.C. § 924(e), which it did not, the change
would have no impact on Long because § 401 does not apply
retroactively to defendants sentenced before December 21, 2018,
the FSA's date of enactment.  The FSA is clear that § 401, and the
amendments made by that section, "shall apply to any offense that
was committed before the date of enactment of this Act, *if a
sentence for the offense has not been imposed as of such date of
enactment*."  FSA § 401(c) (emphasis added); see United States v.

---

[7] The term "felony drug offense" is defined as "an offense that is
punishable by imprisonment for more than one year under any law of
the United States or of a State or foreign country that prohibits
or restricts conduct relating to narcotic drugs, marihuana,
anabolic steroids, or depressant or stimulant substances."  21
U.S.C. § 802(44).

<u>Means,</u> 787 F. App'x 999, 1001 (11th Cir. 2019) (per curiam).
Because Long was sentenced as an armed career criminal in November
2017, more than a year before the FSA was enacted, his mandatory
minimum sentence of fifteen years under the ACCA is unchanged by
the FSA.  Accordingly, Long's claim fails on its merits.

**C.  Long Fails to Establish that the FSA Authorizes the Sentencing Court to Reduce His Sentence.**

Long next argues that the FSA has given district judges
discretion to render sentences "below the mandatory minimums for
non-violent drug offenders." (Doc. 48 at 6).  Thus, Long contends
that Chief Judge DuBose, who sentenced him to the minimum
authorized sentence under § 924(e), now has discretion to revisit
and reduce his sentence.  (<u>Id.</u>).

A district court has no inherent authority to modify a
defendant's sentence, but rather may do so "only when authorized
by a statute or rule."  <u>United States v. Puentes</u>, 803 F.3d 597,
606 (11th Cir. 2015); <u>see also</u> <u>Dillon v. United States</u>, 560 U.S.
817, 824 (2010); 18 U.S.C. § 3582(c).  Long does not identify any
particular section of the FSA that would give the sentencing court
discretion to reduce his sentence.  The Court notes that § 404 of
the FSA permits, but does not require, a court that has "imposed
a sentence for a covered offense" to impose a reduced sentence
under certain circumstances; however, that provision is entirely
inapplicable to Long's case.  <u>See</u> <u>United States v. Scales</u>, 2020

U.S. Dist. LEXIS 925, at *3-4, 2020 WL 43352, at *1-2 (S.D. Fla. Jan. 3, 2020) (explaining § 404 of the FSA).  The Government points out that despite Long's reference to "non-violent drug offenders," Long was not convicted of a drug offense; rather, he was convicted on a firearms charge, to which a statutory enhancement applied based on his *prior* drug convictions.  (Doc. 55 at 17).  Indeed, the undersigned can find no provision in the FSA that would give the sentencing court permission to modify Long's mandatory minimum sentence under 18 U.S.C. § 924(e).

A habeas petitioner's allegations are insufficient to state a claim when they "are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'"  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citations omitted).  Here, Long's vague and meritless assertion that the FSA gives the district judge discretion to reduce his sentence under 18 U.S.C. §§ 922(g)(1) and 924(e) fails to state a viable claim for habeas relief.

### D.   Ineffective Assistance of Counsel.

As his final ground for relief, Long argues that his guilty plea was not knowing and voluntary because his plea and sentencing counsel misadvised him about whether the ACCA sentence enhancement would apply in his case.  (Doc. 48 at 7).  Specifically, Long alleges that his attorney failed to advise him that a conviction for possession with intent to distribute a controlled substance

could qualify as a "serious drug offense" under § 924(e), and he therefore pleaded guilty based on the incorrect assumption that the ACCA enhancement would not apply to him.  (Id.).  Long contends that he would have chosen to go to trial had his attorney properly advised him, because he "had nothing to lose" by choosing to go to trial and "could've done no worse" than the 180-month sentence he received after pleading guilty.  (Id.).  As explained below, Long's claim is without merit.

A guilty plea entered by a defendant fully aware of the direct consequences must stand unless induced by threats, improper promises, or misrepresentations made to the defendant by the court, the prosecutor, or his own counsel.  Brady v. United States, 397 U.S. 742, 755 (1970).  "But, a defendant can still maintain an attack on the voluntary and knowing nature of the guilty plea itself.  Such an attack can be based upon ineffective assistance of counsel claims that go to the knowing and voluntary nature of the plea."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014) (per curiam).

To prevail on a claim of ineffective assistance of counsel in connection with his guilty plea, Long must demonstrate both (1) "that counsel's performance was deficient[,]" meaning that it "fell below an objective standard of reasonableness[,]" and (2) "that the deficient performance prejudiced the defense."  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  Courts

applying this test "are free to dispose of ineffectiveness claims on either of [Strickland's] two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998). To satisfy the "performance" prong of Strickland, Long is required to show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. To do so, Long must overcome the strong presumption that his counsel's conduct fell "within the wide range of reasonable professional assistance[.]" Id. at 689. To satisfy Strickland's "prejudice" prong in the context of a challenge to his guilty plea, Long must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. To prove that he was prejudiced by his counsel's performance in this type of claim, Long "must allege facts that would prove that a decision not to plead guilty 'would have been rational under the circumstances.'" Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

A defendant's representations at a plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). This is because

"[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74. "When a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel." United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984) (per curiam).

Long was advised during his guilty plea colloquy that he might be subject to a sentencing enhancement under § 924(e), although counsel for the Government stated that he did not "think" the enhancement applied in Long's case. (See Doc. 42 at 5-6). Long confirmed under oath that he understood the possible penalties if he chose to plead guilty, including a fifteen-year mandatory minimum sentence under § 924(e). (Id. at 6). At sentencing, the Court asked Long's counsel what she had advised Long before he entered his plea. (Doc. 45 at 6). Long's counsel stated: "We had a separate conversation not on the record. He was advised that potentially he could be looking at the 15-year minimum. However, my client was adamant that the Louisiana case was not a distribution case." (Id.). When asked to address the Court, Long did not dispute his counsel's assertions that she had advised him that he could face the fifteen-year minimum and that he was adamant his Louisiana conviction was not a distribution case. Long instead

stated that he was "under the impression that [the Louisiana case] was possession with intent, you know, not a distribution, it was just a possession with intent." (Id.). However, the Court pointed out that "intent [to distribute] under the law counts as a distribution." (Id. at 7).

The record demonstrates without question that Long was informed, prior to his guilty plea, that § 924(e) might apply in his case. And, while Long might have been confused about § 924(e)(2)(A)'s definition of a "serious drug offense," it is by no means clear that this confusion was the fault of his counsel. However, assuming *arguendo* that Long could meet the "performance" prong of Strickland based on his attorney's alleged failure to advise him that a conviction for possession with intent to distribute a controlled substance could qualify as an ACCA predicate, Long cannot show the requisite prejudice.

Long claims that he would not have taken a blind plea and would have received a sentence of less than 180 months if not for his counsel's "ill-advi[c]e and persuasion[.]" (Doc. 48 at 7). According to Long, he would have obtained a "different outcome and/or a fair trial" with effective assistance of counsel, because he "had nothing to lose" and "could've done no worse than 180 months" had he opted to go to trial. (Id.).

Long's assertion that he "could've done no worse than 180 months" had he gone to trial is glaringly inaccurate. He received

a three-point acceptance of responsibility reduction to his guideline offense level based on his guilty plea, making his total offense level 30 rather than 33. (See Doc. 27 at 5). With this reduction, Long's range of imprisonment under the sentencing guidelines was 180 to 210 months.[8] (Id. at 13). Had he chosen to proceed to trial, Long would not have received the three-point offense level reduction for acceptance of responsibility, and his guideline range would have been substantially higher.[9] Long received the statutory minimum penalty for his offense,[10] which was also at the low end of the guideline range. As discussed previously, Long's guilt was never in question. Had Long nevertheless chosen to contest his guilt at trial, where he would have had no meritorious defenses and where his extensive criminal history would have likely been explored in some detail, it is more than conceivable that he would have received a sentence that, at the very least, was commensurate with the higher guideline range.

---

[8] Based on a total offense level of 30 and a criminal history category of VI, the imprisonment range under the guidelines is 168 to 210 months. However, because Long's statutory minimum sentence was 180 months, his guideline range was 180 to 210 months. (Doc. 27 at 13).

[9] According to the United States Sentencing Commission's Guideline Range Calculator, the guideline imprisonment range based on a total offense level of 33 and a criminal history category of VI is 235 to 293 months. See https://guidelines.ussc.gov/grc.

[10] The maximum term of imprisonment under the statutes was life. (Doc. 27 at 13).

31

Conversely, because of Long's career offender status, he had no realistic chance of receiving a sentence lower than the one he ultimately received as a result of his blind plea.

In addition to being incorrect, Long's assertions fail to establish a reasonable probability that he would have gone to trial if not for his attorney's alleged acts and omissions. Certainly, given Long's obvious guilt, lack of a viable defense, and considerable sentencing exposure, a decision to proceed to trial would have been utterly irrational under the circumstances. As he cannot establish that he was prejudiced by his counsel's performance, Long's ineffective assistance of counsel is without merit and provides no basis for relief.

## IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**.  See 28 U.S.C. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A certificate of appealability may be issued only where "the

applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds, without reaching the merits of an underlying constitutional claim, "a COA should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.; see also id. at 483-84 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot[ v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Long's petition does not warrant the issuance of a certificate of appealability.  Long's <u>Rehaif</u> claim is procedurally defaulted and, moreover, lacks merit.  Long is also entitled to no relief on the merits with respect to his FSA and ineffective assistance of counsel claims.  Reasonable jurists could not debate whether Long's claims should be resolved in a different manner or that Long deserves encouragement to proceed further.  The recommendation that Long's claims be denied is based on the straightforward application of clear Circuit and Supreme Court precedent, and no reasonable jurist could differ on the appropriate disposition of his claims on the record presented.  As a result, Long is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner Brad Jason Long's Motion to Vacate, Set Aside, or Correct Sentence under § 2255 (Doc. 48) be **DENIED**, that this action be **DISMISSED**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Brad Jason Long.  It is further recommended that any requests for a certificate of appealability or for permission to appeal *in forma pauperis* be denied.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **9th** day of **November, 2020.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**